**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

     **vs.**

**ADAM REY GONZALEZ,**

                **Defendant.**

**1:14-CR-144
(MAD)**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **OFFICE OF THE UNITED STATE ATTORNEY**<br>445 Broadway, Room 218<br>Albany, New York 12207<br>Attorney for the Government | **NICHOLAS C.E. WALTER, AUSA** |
| **ADAM REY GONZALEZ**<br>21399-052<br>Danbury Federal Correctional Institution<br>Route 37<br>Danbury, Connecticut 06811<br>Defendant, *pro se* | |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On April 14, 2015, Defendant Adam Rey Gonzalez pled guilty to one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1), and 2256(8)(A). *See* Dkt. No. 41. Defendant was sentenced on August 10, 2025, by United States District Judge Thomas J. McAvoy to 220 months' imprisonment following by a life-term of supervised release, and judgment was entered two days later. *See* Dkt. Nos. 56, 57. Presently before the Court is Defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), which he

1

filed on March 7, 2025.  *See* Dkt. No. 62.  The Government opposes the motion.  *See* Dkt. Nos. 65, 73.  For the reasons that follow, Defendant's motion is denied.

## II. BACKGROUND

Defendant is currently 39 years old, and he came to federal court after having two state court convictions for child sex offenses.  As explained in the Pre-Sentence Investigation Report, in 2006, Defendant was convicted of three counts of possession of child pornography in Vermont state court.  *See* Dkt. No. 52 at ¶ 49.  As part of the investigation which led to the conviction, Defendant was discovered with 190 videos of child pornography, admitted to an undercover agent that he was working at a YMCA near young children where they "did not care about running around 'naked,'" and admitted to sexually abusing a minor relative.  *Id.*  That same year, defendant was convicted in New York state court of having sexual contact with an individual under the age of fourteen and acting in a manner injurious to a child under the age of seventeen.  *See id.* at ¶ 50. Defendant's latest probation release date for those offenses was May 24, 2013.  *See id.* at ¶ 49.

Defendant was then arrested for the underlying federal offense on March 28, 2014.  *See id.* at ¶ 9.  The arrest was based on Defendant's conversations with an undercover federal agent on an online platform, beginning on September 9, 2013.  *See id.* at ¶ 10.  Defendant used the username "'Redart-yob' (boy-trader spelled backwards)."  *Id.*  Defendant sent the agent numerous videos of child pornography.  *See id.* at ¶ 15.  Following the execution of a search warrant on Defendant's residence, law enforcement discovered 475 child pornography files on Defendant's desktop computer.  *See id.* at ¶ 22.  An additional 431 images were found which "depicted children in underwear, swimwear, nudist lifestyle, or were not considered to be child pornography as the individual's age was difficult to determine."  *Id.*  Defendant had a criminal history category of III

and a total offense level of 37; therefore, the Probation Department calculated Defendant's guideline range of imprisonment to be 262 to 327 months. *See id.* at ¶ 85.

As part of Defendant's sentencing memorandum, he noted that he has a close relationship with his maternal grandmother. *See* Dkt. No. 53 at 4. Judge McAvoy sentenced Defendant to 220-months imprisonment, which was below the guidelines range. *See* Dkt. No. 57. Defendant did not appeal his conviction or sentence.

Now, Defendant seeks a reduction in his sentence because (1) he has completed numerous rehabilitative programs; (2) his grandmother suffers from Alzheimer's disease, and he wants to care for her; (3) the conditions of his confinement during the Covid-19 pandemic were harsh; (4) "there is a disparity between [Defendant's] 220-month sentence and other defendants which involved similar or more egregious conduct in violating the same or similar statutes;" and (5) he has served seventy-five-percent of his sentence. *See* Dkt. No. 62 at 3-18. Defendant argues that the factors under 18 U.S.C. § 3553(a) also support his request. *See id.* at 18-20.

The Government opposes Defendant's motion for several reasons: (1) Defendant failed to exhaust his administrative remedies; (2) he did not raise all of his claims in his administrative request; (3) he is not the only person who could care for his grandmother; (4) Defendant's rehabilitation efforts are insufficient to warrant a sentence reduction; (5) the harsh circumstances of confinement during the Covid-19 pandemic are not specific to Defendant; and (6) the § 3553(a) factors do not support the requested relief. *See* Dkt. No. 65. According to the Government, and as demonstrated through Sentencing Computation Data, "[a]s of the date of the defendant's motion, he had served 70% . . . of his sentence when accounting for good time credit, and 60% of his full term." *Id.* at 2.

3

**III. DISCUSSION**

**A.      Exhaustion of Administrative Remedies**

It is well established that "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  Section 3852(c)(1)(A)(i), the compassionate release statute, as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), is one such exception: It permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

By the statute's plain terms, however, a court may do so only "upon motion of the Director of the Bureau of Prisons" or "upon a motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.* § 3582(c)(1)(A).  Once the prison warden denies a request for a sentence reduction, the defendant must appeal within the appropriate timeframe to the Regional Director, and if that appeal is denied, he must appeal again to the General Counsel to receive a final administrative decision.  *See* 28 C.F.R. §§ 571.63(a), 542.15(a); *see also United States v. Eisenberg*, 470 F. Supp. 3d 111, 113 (D.N.H. 2020) (citations omitted); U.S. Dept. of Justice, Fed. Bureau of Prisons Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. § 3582 and 4205(g)*, (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

In his motion, Defendant asserts he applied for a sentence reduction to the Warden at FCI Danbury on January 3, 2025. *See* Dkt. No. 62 at 1. Attached to his motion is the application he sent the Warden. *See* Dkt. No. 62-1 at 35-36. Defendant also presents e-mail communications whereby he notified the Warden of his submission on January 3, 2025, the Warden e-mail back on January 6, 2025, stating "[o]nce it is ready from the RIS coordinator, it will be reviewed," and an e-mail Defendant sent to the Warden on January 31, 2025, noting that he had not received a response, and "the last business day before the 30 day wait (2/2/2[5])" was that day. *See* Dkt. No. 62-1 at 37. Defendant has not stated whether the Warden ever responded to his January 31, 2025, email, or his initial request for a sentence reduction. Defendant filed his presently pending motion on March 7, 2025. *See id.*

The Government argues that this is insufficient to prove that Defendant exhausted his administrative remedies. *See* Dkt. No. 65 at 3-4. As noted, a defendant cannot file a motion for compassionate release until "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The Government contends there are two possible readings of the statutory exhaustion requirement: (1) "that an inmate may only file a motion after waiting 30 days from the BOP's [("Bureau of Prison")] receipt of his request without receiving a response. If the BOP does timely respond, then the inmate must exhaust the administrative procedures made available by the BOP . . . , *id.* at 4 (quoting *United States v. Saladino*, 7 F.4th 120, 123-24 (2d Cir. 2021)); or (2) "that an inmate may file a motion after 30 days, whether the BOP has responded or not," *id.* (citing *Saladino*, 7 F.4th at 124). The Government argues that

5

"[D]efendant has not shown that he did not receive a response from the BOP between Friday, January 31 and Monday, February 3." *Id.*

"'A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a compassionate release motion].'" *United States v. Osborne*, No. 14-CR-264, 2026 WL 523162, *4 (E.D.N.Y. Feb. 25, 2026) (quoting *United States v. Robinson*, No. 10-CR-0789, 2022 WL 16924176, *3 (E.D.N.Y. Nov. 14, 2022)).  "And, '[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements.'" *Id.* (citation omitted).  "'[A] defendant seeking release should include evidence of compliance with the First Step Act's mandatory administrative exhaustion requirement,' such as documentation of the request submitted with the compassionate release motion." *Id.* (citing *United States v. Friedlander*, No. 20-CR-0441, 2022 WL 2305370, *3 (E.D.N.Y. June 24, 2022)); *see also United States v. Hernandez*, No. 14-CR-0264, 2026 WL 111639, at *1 (E.D.N.Y. Jan. 14, 2026) (finding sufficient defendant providing a copy of compassionate release request to warden, even though it was unclear if the warden received same); *United States v. Cabral*, No. 12-CR-0336, 2025 WL 3628402, *4 (E.D.N.Y. Dec. 13, 2025) (finding defendant satisfied his exhaustion burden where he provided copy of his "Inmate Request" even though there was "no indication in the record as to the warden's response").

However, "§ 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional." *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (citing *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020); *United States v. Franco*, 973 F.3d 465, 467-68 (5th Cir. 2020); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)).  Section "3582(c)(1)(A)'s exhaustion requirement is a 'claim-processing rule[ ]' and

6

accordingly 'may be waived or forfeited.'" *Id.* (*quoting Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 19 (2017)).

Neither party has indicated whether the Warden ever responded to Defendant's request, but Defendant submitted his request two months before he filed his present motion. *See* Dkt. Nos. 62, 65. The Warden did respond to Defendant's e-mail stating that once the request was ready from a coordinator, it would be reviewed. *See* Dkt. No. 62-1 at 37. It, therefore, appears that Defendant waited longer than thirty days from the time he sent the request before filing his motion such that the Court could deem Defendant's claims to be exhausted. *See, e.g.*, *United States v. Boccanfuso*, No. 15-CR-341, 2023 WL 3741980, *3 (S.D.N.Y. May 31, 2023) ("The Court finds that Mr. Boccanfuso has adequately demonstrated exhaustion of his administrative remedies—he has proffered a sworn declaration asserting that he presented his request to the warden more than 30 days prior to filing this Motion, and has also submitted (albeit in a reply brief) a copy of the request to the warden. Moreover, the Government has not provided any declaration from any individual with personal knowledge of BOP records or databases to support its assertion that the BOP has no record of Mr. Boccanfuso's request").

The Second Circuit has "not decide[d]" the issue presented by the Government as to whether "an inmate may only file a motion after waiting 30 days from the BOP's receipt of his request without receiving a response'" where it is unclear whether the Warden reviewed the request. Dkt. No. 65 at 2 (quoting *Saladino*, 7 F.4th 124). In a different but related context, the Second Circuit has held "that, because the [applicable statute] imposes a mandatory deadline for the [administrative body] to respond, an inmate exhausts administrative remedies when he follows the procedure in its entirety but the [the administrative body] fails to respond within the 30 days it is allocated under the regulations." *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020). Such a

conclusion lends credence to the idea that the Second Circuit would come to a similar conclusion in the compassionate release context—that where the statute permits a defendant "to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," 18 U.S.C. § 3582(c)(1)(A), the Defendant may file such a motion if he has not received a response within 30 days.

However, the Court does not need to definitively decide this issue because exhaustion is not jurisdictional, and Defendant has failed to establish that he is entitled to compassionate release on the merits.[1]

## B.    Merits of Defendant's Motion

The Court may grant compassionate release only "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In a policy statement, the United States Sentencing Commission has defined "extraordinary and compelling

---

[1] The Government also argues that Defendant failed to exhaust his administrative remedies because he applied for compassionate release to the Warden only based on his alleged need to care for his grandmother. *See* Dkt. No. 65 at 8-9. The Government is correct that, in Defendant's application to the Warden, which he attached to his motion, Defendant requested a reduction in his sentence only "to care for [his] elderly grandmother who is experiencing deteriorating health and [he is] the only available caregiver." Dkt. No. 62-1 at 35. Defendant did not mention Covid-19 or his rehabilitative efforts. *See id.* Some "courts have generally required an inmate to present to the warden of his or her facility the 'the same or similar ground for compassionate release' he or she plans to raise in a motion to the court, in order to properly exhaust that ground." *United States v. Collado*, No. 14-CR-731, 2021 WL 2555838, *3 (S.D.N.Y. June 21, 2021) (citation omitted) (collecting cases); *see also United States v. Dejesus-Santiago*, No. 08-CR-6210, 2025 WL 3140242, *5 (W.D.N.Y. Nov. 10, 2025). However, that holding is not universal. Another judge in the Southern District of New York has held "that issue exhaustion is not required. . . . [T]he Supreme Court has emphasized that 'requirements of administrative issue exhaustion are largely creatures of statute.'" *United States v. Torres*, 464 F. Supp. 3d 651, 655 (S.D.N.Y. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 107 (2000)). The *Torres* court noted that the statute does not include an issue exhaustion provision. *See id.* The Court declines to decide whether issue is exhaustion is required because Defendant has failed to provide meritorious justifications to warrant compassionate release.

reasons," in part, as a circumstance in which "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13(b)(1)(B)(i).

"The moving defendant bears the burden of proving that 'extraordinary and compelling reasons' justify a reduction of his or her sentence."  *United States v. Andrews*, 705 F. Supp. 3d 142, 147 (S.D.N.Y. 2023) (quoting *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)) (additional citation omitted).  "A motion for compassionate release is 'not an opportunity to second guess or to reconsider the sentencing court's original decision.'"  *Id.* (quoting *United States v. Roney*, 833 Fed. Appx. 850, 854 (2d Cir. 2020)).

The "extraordinary and compelling" "language is intended to impose an exacting standard."  *United States v. Diaz*, 779 F. Supp. 3d 226, 233 (N.D.N.Y. 2024) (quoting *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021)).  "Indeed, the Second Circuit has emphasized that an 'extraordinary' reason is something 'most unusual,' 'far from common,' with 'little or no precedent,' 'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'"  *Id.* (quoting *United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024)).  "Likewise, a sufficiently 'compelling' reason is one that 'is both powerful and convincing.'"  *Id.* (citation omitted).

"In addition to these exacting requirements, a sentence reduction must be 'consistent with the applicable policy statements issued by the Sentencing Commission.'"  *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i); citing 28 U.S.C. § 994(t) (delegating authority to the Commission to "describe what should be considered extraordinary and compelling reasons . . ., including the criteria to be applied and a list of specific examples")).  "The applicable policy statement for compassionate

release is found in U.S. Sentencing Guidelines § 1B1.13 and its commentary." *Id.* (citing *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).  "Recently, the Sentencing Commission amended [its] policy statement to provide a somewhat expanded definition of 'extraordinary and compelling reasons.'" *Id.* (citations omitted).  "'The latest definition was meant to accord with the First Step Act's purpose of increasing the use of sentence reduction motions under [§] 3582(c)(1)(A).'" *Id.* at 233-34 (quoting *United States v. Donato*, No. 03-CR-929, 2024 WL 665939, *3 (E.D.N.Y. Feb. 16, 2024)).

Section 1B1.13 provides examples of what might suffice to establish an "extraordinary and compelling" reason for compassionate release including (1) a defendant's medical circumstances; (2) a defendant's age; (3) a defendant's family circumstances; and (4) abuse suffered by the defendant while in custody.  *See* U.S.S.G. 1B1.13(b).  "The amended policy statement also includes a catch-all provision that authorizes a court to consider 'Other Reasons' a defendant might present that, considered alone or in combination with the enumerated reasons, are sufficiently 'similar in gravity' to qualify as extraordinary and compelling reasons." *Diaz*, 779 F. Supp. 3d at 234 (quoting 7 U.S.S.G. § 1B1.3(b)(5)).

Courts have concluded that a district court may rely solely on the § 3553 factors or a determination regarding extraordinary and compelling reasons to deny compassionate release. *See United States v. Keitt*, 21 F.4th 67, 73 n.4 (2d Cir. 2021) ("In reaching this conclusion, we join our sister Circuits that have similarly held that a district court may rely solely on the § 3553(a) factors when denying a defendant's motion for compassionate release") (collecting cases). That is because it is only if all of the requirements are met—there is an extraordinary and compelling reason, reduction is consistent with applicable policy statements issued by the Sentencing Commission, and all relevant sentencing factors listed in 18 U.S.C. § 3553(a) support

10

a reduction—that compassionate release will be granted. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020); citing 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021) ("District courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others").

As explained in more detail below, Defendant has not established an extraordinary and compelling reason that warrants a sentence reduction, and his sentence does not create a sentencing disparity.

First, Defendant argues that his participation in rehabilitation programs during his incarceration constitutes an extraordinary and compelling reason for his release. Defendant notes he completed over eighty-five programs between 2016 and 2025. *See* Dkt. No. 62-1; Dkt. No. 68 at 7. He asserts that the "programs clearly demonstrate a commitment to bettering himself while in prison." Dkt. No. 68 at 8. Defendant states there is "a distinction between ordinary rehabilitation that many inmates complete and the extraordinary rehabilitation efforts of the Defendant." Dkt. No. 62 at 4. He calls his conduct "more than mere rehabilitation" and he considers his conduct to constitute "unique and impressive post-offense rehabilitation." *Id.* at 5-6. The Government argues Defendant's participation in the programs "is unremarkable" because incarcerated individuals "are 'expected' to make good use of their time" while incarcerated "[a]nd the courses that the defendant has completed, for the most part, do not indicate any focus on rehabilitation." Dkt. No. 65 at 9 (citation omitted).

The Sentencing Guidelines specifically state that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in

11

the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d).  "At minimum, 'rehabilitation requires the court to examine whether a defendant has taken responsibility for his ... actions and acted to reintegrate [him]self into a productive society.'"  *Mayzick v. United States*, No. 16-CR-429, 2026 WL 879520, *24 (E.D.N.Y. Mar. 31, 2026) (quoting *United States v. Byam*, No. 12-CR-0586, 2024 WL 1556741, *7 (E.D.N.Y. Apr. 10, 2024)); *see also United States v. Blake*, 89 F. Supp. 2d 328, 346 (E.D.N.Y. 2000).  "And, nonetheless, 'a productive institutional record while incarcerated is what is expected . . . .'"  *Mayzick*, 2026 WL 879520, at *24 (quoting *United States v. Baptiste*, No. 15-CR-854, 2024 WL 3425818, *2 (S.D.N.Y. July 16, 2024)).

Defendant has engaged in continuously learning new skills or information during his incarceration.  However, his efforts are insufficient for the Court to find that he is sufficiently rehabilitated or that his purported rehabilitation supports a sentence reduction.

Most concerning to the Court is that Defendant does not appear remorseful for his actions. Throughout his three different filings related to his motion for compassionate release, he does not once apologize for his conduct, attest to how egregious and horrific his actions were which led to his incarceration, or otherwise state that he regrets what he did.  *See* Dkt. Nos. 62, 68, 77.  He has not submitted any letters or statements from other incarcerated individuals, work supervisors, corrections officers, or mental health professionals attesting to his rehabilitation.  *See United States v. Hernandez*, No. 14-CR-264, 2026 WL 111639, *8 (E.D.N.Y. Jan. 14, 2026) (denying compassionate release where the defendant "has not, for example: (a) offered his own letter of contrition; (b) provided letters of support from prison staff; or (3) presented evidence of maintaining familial relationships"); *United States v. Martinez*, No. 06-CR-987, 2024 WL 4188311, *8 (S.D.N.Y. Sept. 13, 2024) (granting compassionate release because the defendant "completed 73 programs, including every psychology program available to improve his mental

health.  Martinez has continued to work and excel at his job.  Martinez's work supervisor wrote that he is a 'hard working[,] dedicated employee determined to do his best at anything he is tasked with.' . . .  Martinez has also demonstrated a sincere commitment to mentoring other inmates in the prison. Martinez's mentorship of others is illustrated by his participation in the Suicide Watch Companion Team.  Finally, Martinez has acknowledged the gravity of his offenses and 'fully accepts responsibility for his actions without seeking to justify or minimize them'").

There is also no indication Defendant has paid anything toward the $12,000 he owes in restitution.  *See* Dkt. No. 57; *cf. United States v. Snype*, 683 F. Supp. 3d 351, 363-64 (S.D.N.Y. 2023) ("Snype's rehabilitation is further evidenced by his full satisfaction, as of April 15, 2016, of 'restitution in the amount of $13,419.00 and the special assessment in the amount of $100.00 amounting in all to the sum of $13,519.00'").

Defendant did take "exploring anxiety," "exploring depression," "creating a healthier life," and "anxiety versus depression" classes in late 2021 and early 2022.  Dkt. No. 62-1 at 2. Otherwise, his classes concern biological sciences, art, history, and business.  *See id.*

Defendant blames the Government and the BOP for this.  Defendant argues that "the Government failed to provide this Court with any information regarding any mental health or mental health programs that were offered at FCI-Otisville while [Defendant] was incarcerated there or are currently available at FCI Danbury where [Defendant] is currently incarcerated." Dkt. No. 68 at 9.  He contends "the BOP has failed to provide the Defendant with any specialized mental health treatment programs and the BOP has failed to house the Defendant at a facility that offers such treatment."  *Id.*  Defendant states that he "is on the waiting list to participate in sex offender treatment, which the BOP will not offer the Defendant until he has less than 36 months remaining on his sentence."  Dkt. No. 77 at 3.

13

Through the Court's research, it found that the BOP instructs incarcerated individuals after their admission about "Psychology Services."  Specifically, the admission handbook states that "Psychology Services Departments in all BOP institutions offer basic mental health care to inmates.  This care may include screening, assessment and treatment of mental health or drug abuse problems, individual and/or group counseling, psycho- educational classes, selfhelp and supportive services, or referral to Health Services for medicaltreatment of a mental illness."[2]  The handbook states as follows:

> There are a number of ways to contact Psychology Services at this institution.  You may:
>
> • Submit an Inmate Request to a Staff Member (a "Cop-out") to Psychology Services or by TRULINCS messaging.
>
> • Speak with a Psychology Services staff member during mainline or as they make rounds in your unit.

*Id.* at p. 31.  The handbook also notes that "[g]roups are offered . . . on a rotating basis and include topics such as Anger Management, Criminal Thinking, Basic Cognitive Skills, Seeking Strength, and Emotional Self- Regulation.  When a group is offered, an announcement will be displayed on Trulincs  and inmates must submit an electronic request . . . to Psychology Services in order to participate."  *Id.* at p. 36.

Beyond taking the four previously identified course in 2021 and 2022, Defendant has not indicated that he once contacted Psychology Services in an effort to obtain any counseling or other help regarding mental health, his history of sex offenses, etc.

---

[2] Inmate Admission & Orientation Handbook, https://www.bop.gov/locations/institutions/dan/dan_ao-handbook.pdf?v=1.0.0, p. 30 (last visited May 20, 2026).

Defendant says his "sentence was substantially higher than those with far more egregious conduct than" his. Dkt. No. 62 at 14. He states that "[w]hile the instant offense was serious," that does not foreclose the possibility of a sentence reduction. Dkt. No. 62 at 16. He indicates that he is a low security risk and low recidivism risk. *See id.* at 18. Defendant also contends that "[i]t is clear that the Government does not either understand or fully appreciate the amount of time, work, energy, and commitment required to be part of these rehabilitation programs." *Id.* at 8. He states he has made productive use of his time and has "demonstrate[d] a commitment to bettering himself while in prison." *Id.* He argues "[t]he Defendant cannot be faulted for not participating in treatment the FCI Otisville and FCI Danbury do not provide in the first place." *Id.* at 10. Defendant states "the Government has provided absolutely no indication as to when, if ever, the BOP will provide any specific mental health treatment to" Defendant. *Id.*

Defendant does not contend that he ever sought out mental health treatment. He does not state that he reached out to Psychology Services, spoke to anyone working in the mental health field within DOCCS, or otherwise sought out treatment and was denied. Defendant takes great pains to blame the Government and DOCCS for his lack of mental health treatment, but he does not attest that he has ever sought such treatment. As to Defendant's low security and recidivism risk scores, *see* Dkt. No. 62-1 at 40, those scores appear to be based on the number of classes he has taken, his high school degree, and that he has not received any incident reports while in prison, *see id.* Therefore, that score does not sway the Court into believing that Defendant is entirely rehabilitated.

The Court finds that Defendant's participation in four mental-health-focused classes in the ten years he has been incarcerated does not demonstrate rehabilitation. The other courses he has taken do not alter this conclusion because he is expected to make good use of his time while

15

incarcerated and one's rehabilitation concerns far more than becoming educated on new topics or hobbies.

Defendant's criminal history and the offense conduct underlying his current conviction involve egregious sexual crimes against children. Defendant chose to work in jobs that put him in close proximity to young children. And he started to engage in the conduct underlying his present conviction only a few months after getting off of probation from his prior offenses. The Court ordered sex offender treatment as part of Defendant's sentence because he needs to work on his mental health, emotional stability, etc. He does not appear to have done so which is especially concerning to the Court considering Defendant's failure to express any remorse in his filings. As such, Defendant's purported rehabilitation does not establish an extraordinary and compelling reason for his early release.

Regardless, even if Defendant's efforts demonstrated serious rehabilitation, "[b]ecause the Court concludes that none of the other reasons [Defendant] raises is extraordinary and compelling, [Defendant]'s asserted rehabilitation by itself does not constitute an extraordinary and compelling reason warranting a sentence reduction . . . ." *United States v. Larkin*, No. 19-CR-833, 2026 WL 456596, *2 (S.D.N.Y. Feb. 18, 2026); *see also United States v. Carey*, No. 09-CR-441, 2026 WL 1004627, *3 (E.D.N.Y. Apr. 14, 2026) ("Given the Court's finding that Defendant's other arguments do not constitute extraordinary and compelling reasons, 'even evidence of complete rehabilitation cannot suffice'") (quoting *United States v. Raposo*, No. 98-CR-185, 2024 WL 165195, *9 (S.D.N.Y. Jan. 16, 2024)).

Defendant next argues that he is entitled to a sentence reduction because he was incarcerated during the Covid-19 pandemic. *See* Dkt. No. 62 at 10. Defendant argues COVID-19 pandemic "severely impeded [his] ability to participate in group programming and interact with

16

his family and support system." *Id.* Defendant contends "the unforeseen and particularly harsh conditions of confinement during the pandemic have rendered [Defendant's] sentence more severely punishing than could have been contemplated when the sentence was imposed." *Id.* at 11.

"Since the incidence of COVID-19 infections has declined, '[c]ourts in this Circuit have repeatedly held that a Defendant's elevated risk of developing COVID-19 symptoms is insufficient to justify compassionate release.'" *United States v. Miller*, No. 20-CR-216, 2026 WL 1257331, *4 (E.D.N.Y. May 7, 2026) (citing *United States v. Bradley*, No. 19-CR-632, 2023 WL 3004660, *2 (S.D.N.Y. Apr. 19, 2023)); *see also United States v. Johnson*, 671 F. Supp. 3d 265, 280 (E.D.N.Y. 2023) ("Since the decline of COVID-19 cases and proliferation of vaccines, courts in this Circuit have generally rejected compassionate release motions based on the threat posed by the virus, asserting that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors"); *United States v. Valdez*, No. 17-CR-487, 2026 WL 864532, *3 (S.D.N.Y. Mar. 30, 2026); *United States v. Baker*, No. 24-2560, 2026 WL 860793, at *2 (2d Cir. Mar. 30, 2026) ("Baker argued that the COVID-19 pandemic and related prison conditions warranted release. But as the district court observed, case counts were now low, and Baker did not adequately demonstrate that he had a medical condition that placed him at an increased risk of severe illness. . . . Accordingly, the district court's denial of a sentence reduction was well 'within the range of permissible decisions'"). Another judge in this district has rejected a "[d]efendant's [] argument [that] the conditions of confinement during the pandemic at FCI Danbury" justified compassionate release. *United States v. Williams*, No. 1:19-CR-74, 2026 WL 875232, *4 (N.D.N.Y. Mar. 31, 2026).

17

Defendant has not presented a single specific reason as to why Covid-19 placed him at an increased risk of harm while incarcerated. He has not stated any medical conditions which make him more susceptible to getting Covid-19 or being harmed by it. Defendant has only noted the increased harm and stress that all incarcerated individuals had to endure during the height of the pandemic. As such, the risk that the defendant might contract Covid-19 or that he had to suffer harsher conditions than normal during the pandemic is not a compelling reason to grant compassionate release.

Defendant also argues that it is an extraordinary and compelling circumstance warranting a sentence reduction that he is the only person who can care for his grandmother who has Alzheimer's and her health has been declining. *See* Dkt. No. 62 at 6. Defendant submitted a letter from his mother along with his reply which states that Defendant's grandmother "has been declining rapidly" since November of 2024. Dkt. No. 68 at 54. She notes that "[t]he doctor recommended a Memory Care facility or 24/7 car in her home." *Id.* The letter is dated April 23, 2025. *See id.*

As to family circumstances, the Sentencing Guidelines requires that "the defendant would be the only available caregiver for such family member or individual." U.S.S.G. § 1B.13(b)(3). "'[M]ultiple courts within this Circuit have found that a defendant seeking compassionate release based on that person's caregiver status must provide "several sources" of evidence to buttress such a claim.'" *United States v. Sharma*, No. 19-CR-24, 2023 WL 4305054, *at* *3 (E.D.N.Y. June 30, 2023) (collecting cases); *see also United States v. Khan*, No. 20-CR-117, 2024 WL 5154195, *3 (S.D.N.Y. Dec. 18, 2024) )("And courts 'generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire

18

conditions'") (quoting *United States v. Lindsey*, No. 13-CR-71, 2021 WL 37688, *3 (S.D.N.Y. Jan. 4, 2021)).

Courts have denied requests for compassionate release where the defendant has "fail[ed] to establish that no alternative sources of care are available, including other family and friends or social service and community programs." *United States v. Wilson*, No. 10-CR-363, 2021 WL 2327312, *4-5 (W.D.N.Y. June 8, 2021) (citing *United States v. Irizzary*, Criminal Action No. 14-CR-652, 2021 WL 735779, *8 (E.D. Pa. Feb. 25, 2021); *United States v. Pabon*, 17-CR-312, 2021 WL 603269, *4 (S.D.N.Y. Feb. 16, 2021); *Lindsey*, 2021 WL 37688, at *3; *United States v. Moore*, No. 14-CR-209, 2020 WL 7024245, *6 (E.D. Pa. Nov. 30, 2020)).

The Court appreciates Defendant's desire to care for his grandmother.  However, he has not established that he is the only person who can care for her.  Importantly, Defendant's mother's letter is dated April 23, 2025, and no subsequent letter or information has been provided to the Court which indicates that Defendant's grandmother has been left uncared for, for the past year. *See Wilson*, 2021 WL 2327312, at *4  ("While this Court understands that Wilson and his mother prefer that Wilson serve as caregiver given their close relationship, this preference does not amount to an extraordinary and compelling reason for a sentence reduction").

Finally, one of the § 3353(a) factors is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); *see also United States v. Russo*, 643 F. Supp. 3d 325, 334 (E.D.N.Y. 2022) ("One of the sentencing court's requisite considerations is 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct'") (quoting 18 U.S.C. § 3553(a)(6)).  This provision "was intended to eliminate national disparity." *United States v. Wills*, 476 F.3d 103, 109 (2d Cir. 2007); *cf. United States v.*

19

*Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020) ("Moreover, granting [the defendant's] motion would create an "unwarranted sentence disparit[y] among defendants").

Defendant cites ten cases from across the country which he argues demonstrates a sentencing disparity. *See* Dkt. No. 62 at 13-15. Defendant is incorrect. Each case he cites involves different facts underlying the conviction, a different criminal history, and/or different personal characteristics, which are not present in Defendant's case.

First, Defendant cites *United States v. Austin*, No. 8:13-CR-105, 2023 WL 1995284, *1 (D. Neb. Feb. 14, 2023), *aff'd*, No. 23-1383, 2023 WL 5572683 (8th Cir. Mar. 9, 2023). In that case, the defendant had child pornography charges that did not concern hands-on offenses. Here, Defendant, has a criminal history involving a hands-on offense. Next, in *United States v. Burris*, No. 08-CR-25, 2015 WL 9305652, *5 (D. Mont. Dec. 21, 2015), the defendant had "extensive involvement with child pornography," "he admitted that he preferred females around the age of 12" and "admitted he planned to travel to Montana to have sexual intercourse with the two girls, ages 8 and 12." *Id.* (citations omitted). The "[d]efendant also admitted having actual sexual contact with a girl in his neighborhood (claiming that the girl told him she was '18 or 19 years old') and having fantasies about three other children in the neighborhood whom he and his wife babysat." *Id.* However, the defendant was not convicted of any hands on offenses and "[d]uring the sentencing hearing, and in response to the government's expression of concern about the possibility of a prior hands-on sexual offense, the Court specifically stated that it would not sentence the Defendant as being a prior hands-on sex offender because there was no corroboration of Defendant's admission." *Id.* Here, Defendant has a criminal history involving sexual contact with a minor.

Defendant also cites *United States v. Kushmaul*, 984 F.3d 1359 (11th Cir. 2021), in which the defendant was convicted of distribution and possession of child pornography and law enforcement's "download revealed twenty images of 'child sexual abuse material.' Most of the images were of nude, prepubescent girls in sexually provocative poses, but there were additional images of nude children in non-provocative poses." Here, Defendant was found with "approximately 475 child pornography files, fifty-two of which depicted known victims." Dkt. No. 52 at ¶ 22.

Defendant's reliance on *United States v. Sullivan*, 414 Fed. Appx. 477 (3rd Cir. 2011) is the most persuasive. There, the defendant "forwarded 137 images of child pornography to" a law enforcement agent. *Id.* at 478. The defendant's "computer's hard drive revealed 292 images of child pornography, including the 137 images that were forwarded to [the agent]. Among those images that had not been forwarded to [the agent] were three images determined to contain sadistic or masochistic conduct involving children." *Id.* at 479. The defendant "was charged with one count of Distributing Child Pornography under 18 U.S.C. § 2252A (a)(2)(B) to which he pled guilty on December 29, 2009" and he had two prior convictions involving inappropriate contact with minor children. *Id.* The Defendant was sentenced to 180 months' imprisonment and the sentencing court "expressly factored-in [the defendant's] poor health in imposing a non-guideline sentence of 180 months under 18 U.S.C. § 3553(a), which was 8 months below the advisory guidelines' sentencing range." *Id.* The defendant "suffer[ed] from chronic obstructive pulmonary disease, emphysema, sleep apnea, and blindness in his right eye." *Id.*

First, in *Sullivan*, the defendant's guideline range was between 188 and 235 months, which is lower than Defendant's guideline range. *See id.* Second, Defendant does not have health issues that supported a reduction in his sentence.

Defendant also references *Asmodeo v. United States*, No. 15-CR-327, 2020 WL 6083556, *1 (S.D.N.Y. Oct. 15, 2020). In that case, a search of the defendant's computer "revealed more than 3,000 pornographic images and 20 pornographic videos of children" *Id.* Then, "the government obtained a superseding indictment . . . charging two new offenses—sexual exploitation of a minor in 2002 and possession of child pornography in 2005. Those charges related to [the defendant's] sexual abuse of a 12-year-old girl . . . and his use of a camera to record his engaging in sexual intercourse with Victim-1.2" *Asmodeo v. United States*, No. 20-CV-8330, 2021 WL 6126991, *1 (S.D.N.Y. Dec. 28, 2021). Asmodeo's offense level was 31 and he was a criminal history category of I. *See United States v. Asmodeo*, 15-CR-327, Dkt. No. 86 at 4 (Government Sentencing Memorandum). Here, Defendant's offense level was 37 and his criminal history category was III. *See* Dkt. No. 52 at ¶ 85.

In *Porter v. United States*, No. 6:11-CR-95, 2022 WL 2195465, *1 (E.D. Tex. May 18, 2022), *R. & R. adopted*, 2022 WL 2195015 (E.D. Tex. June 17, 2022), the defendant did not have prior sex offense convictions, and he downloaded eight images. In *United States v. Murphy*, No. 15-CR-3163, 2021 WL 254267, *1 (S.D. Cal. Jan. 26, 2021), despite the defendant engaging in hands on offenses and having a guideline range was 210 to 262 months, "[t]he court sentenced the defendant to the mandatory minimum 180 months of custody, moderately below the low end of the guidelines, finding it an appropriate sentence balancing the defendant's age at the time of sentencing, almost 64 years old, and his chronic health conditions with his lengthy history involving sexual contacts with children."

As stated, here, Defendant was found with hundreds of images of child pornography files, had a prior hands-on offense conviction, and was 28 years old at the time he was sentenced.

In *Laubacker v. United States*, No. 16-CR-86, 2020 WL 2113461, *1 (W.D.N.Y. May 4, 2020), the defendant pled guilty to enticing a minor to engage in sexual activity and cyberstalking, and he was sentenced to 180 months' imprisonment. The case Defendant cites does not provide any details about the offense conduct or the defendant's criminal history. Defendant does not provide any of that information. *See* Dkt. No. 62 at 15. It appears that Laubacker's offense level was 35 and his criminal history category was I. *See United States v. Laubacker*, No. 16-CR-86, Dkt. No. 82.

Defendant also cites *United States v. Rodarmel*, No. 15-CR-10105, 2020 WL 2840059, *2 (D. Kan. June 1, 2020). *See* Dkt. No. 62 at 15. There, the defendant received a 204-month sentence after her plea of guilty to transportation of a minor with intent that such minor engage in sexual activity. "The nature and circumstance of Defendant's offense are egregious, as they involved [the d]efendant's knowing subjection of a 13-year old minor to a planned sexual assault by the co-defendant." *United States v. Rodarmel*, No. 15-10105, 2022 WL 2064901, *1 (D. Kan. June 8, 2022). "The co-defendant received a 300-month sentence for his part in the offense" and the "[d]efendant had no criminal history at the time she committed the instant offense." *Id.*

As has already been stated, here, Defendant had a criminal history and received a lesser sentence than the co-defendant in *Rodarmel*.

Finally, Defendant cites *White v. United States*, No. 13-CR-255, 2022 WL 4244219, *1 (W.D.N.Y. Sept. 15, 2022), *aff'd sub nom. United States v. Connelly*, No. 22-2337, 2023 WL 8446806 (2d Cir. Dec. 6, 2023). In that case, the defendant was sentenced to 156 months' imprisonment for sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591 (a)(1) and (b)(1). The defendant "used force and other forms of coercion against the women (including one minor female) who worked for him, including physical assault, rape, charging

23

'debts' for disobeying his rules, making them payoff their 'debts' by prostituting themselves, and taking all of the money the women collected." *Id.* The defendant "used fear to gain compliance, and plied the women with drugs and alcohol to keep them awake to have sex with as many clients as possible." *Id.* "Some women were forced to have sex with up to 20 men per day." *Id.* White's offense level was 33 and his criminal history category was II. *See United States v. White*, No. 13-CR-255, Dkt. No. 85.

In sum, none of the cases cited by Defendant support the conclusion that Defendant's original sentence created a sentencing disparity. He was sentenced according to the total offense level, his criminal history category, and the § 3553(a) factors. As the Government argues, granting Defendant's request for immediate release would create a sentencing disparity because it would result in Defendant being released prior to serving the mandatory minimum sentence of fifteen years. *See* Dkt. No. 65 at 6; see also 18 U.S.C. § 2252A(b)(1) (noting that a person convicted under the statute with a qualifying prior offense "shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years").

Additionally, United States Sentencing Commission Interactive Data Analyzer demonstrates that in the 2015 fiscal year, 22.2% of the reported defendants were sentenced to 15 years to less than 20 and 33.3% were 10 years to less than 15.[3] Based on the foregoing, Defendant's sentence does not create a sentencing disparity and Defendant's argument does not support compassionate release.

---

[3] The Court used the following criteria: "Fiscal Year: 2015; Circuit: All; State: All; District: All; Race: White,Hispanic; Gender: Male; Age: 26-30; Citizenship: All; Education: All; Crime Type: Child Pornography; Guideline: §2G2.2; Drug Type: All; §2B1.1 Offense Type: All; Sentencing Zone: D; Criminal History: III; Career Offender Status: All." United States Sentencing Commission Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard.

In sum, Defendant has not presented any cognizable grounds upon which compassionate release can be granted.[4]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for a sentence reduction (Dkt. No. 62) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:   May 22, 2026
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[4] The Court need not analyze each of the other § 3553(a) factors because it is clear that Defendant has not established an extraordinary and compelling reason for a sentence reduction.

25